UNITED STATES of America and Charles W. Brown, Revenue Agent, Petitioners,

v.

Edwin R. COATES, as Representative of Church of Reflection, Inc., Respondent.

Civ. No. S–80–603 MLS.

United States District Court, E. D. California.

Nov. 19, 1981.

---

vice ("IRS") summons commenced sometime prior to December 1, 1978. On that date the IRS District Director, by letter, requested respondent Edwin R. Coates, as representative of the Church of Reflection, Inc. ("Church"), to provide the IRS with the following items: 1) a copy of the annual financial reports of the Church for the years 1976 and 1977; 2) a description of the number, nature and place of religious meetings held during the three months prior to December 1978; 3) a description of "any other activities undertaken during the same period"; and 4) a list of names and addresses of all officers, leaders, and paid employees of the Church, including a description of each person's duties and qualifications for the position held.

Respondent Coates did not provide the IRS with the items requested. Accordingly, the District Director made a second request for the materials by letter dated January 4, 1979. In addition, the District Director requested that respondent submit a copy of the annual financial report of the Church for the year 1978 and describe the number and nature of religious meetings held by the Church during the preceding four, rather than three, months.

In March 1979 respondent provided the IRS with some of the requested documentation. At the end of March IRS Agent Daniel F. Brown advised respondent Coates that the Service had not yet decided whether to proceed with an examination of the Church's tax exempt status.

Respondent heard nothing further from the IRS until he received a letter dated June 6, 1979 from Regional Commissioner Thomas A. Cardoza. The Commissioner advised respondent, in pertinent part, as follows:

Michael H. C. Chun, Trial Atty., Tax Division U. S. Dept. of Justice, Washington, D. C., for petitioners.

John M. Youngquist, San Francisco, Cal., for respondent.

## OPINION

MILTON L. SCHWARTZ, District Judge.

The tax investigation giving rise to this action to enforce an Internal Revenue Ser-

> In letters to you dated December 1, 1978, and January 4, 1979, the San Francisco District Director attempted to obtain information necessary to an examination of your organization. However, the information supplied does not sufficiently answer the inquiries.

Therefore, in accordance with the procedures set forth in Treasury Regulation 301.7605, I believe it is necessary to examine your books of account and other financial information as well as examine your religious activities. Accordingly, I have authorized the San Francisco District to make an examination of your books and your religious activities under the provisions of Sections 7602 and 7605(c) of the Internal Revenue Code. It may also be necessary to examine other records and documents in your possession or control that may be relevant to the inquiries described above, and also determine your compliance with any filing requirements imposed on you by the Code. For the examination, it will be necessary for you to have available all books, records, papers or other information including, but not limited to: your books of account, bank records, minutes of your meetings, correspondence files and lists of substantial contributors.

Respondent, through counsel, vigorously objected to the examination authorized by the Regional Commissioner, and considerable correspondence passed between counsel and the IRS. However, the Service remained firm in its position that it is entitled to examine the books of account of a church, upon proper notice, for the purpose of reviewing the church's tax exempt status as well as for the purpose of determining the presence and amount of any unrelated business income, and that it is entitled to examine the religious activities of a church, without notice, for the purpose of reviewing the church's tax exempt status.

On August 17, 1979 the IRS issued the summons here in dispute. The summons is directed to respondent Coates as representative of the Church of Reflection, Inc. and requested his appearance before IRS Agent Daniel F. Brown on September 4, 1979 for the purpose of testifying and producing the following items:

1. All records pertaining to cash receipts and disbursements including but not limited to bank statements, deposit slips, cancelled checks, balance sheets and other financial statements of the Church of Reflection Inc. covering the years 1976, 1977 and 1978.

2. All documents related to the organizational structure and history of the Church of Reflection Inc. including articles of organization, by-laws, charter, and all amendments thereto.

3. All minutes of any meetings held by the officers, directors, trustees, or ministers of the Church of Reflection Inc. during the period of January 1, 1976 to December 31, 1978.

4. Documents reflecting any sacerdotal functions performed by any person representing the Church of Reflection Inc. during the period of January 1, 1976 to December 31, 1978.

5. All documents reflecting any prerequisites or actions necessary for membership in or ordination by the Church of Reflection Inc.

6. All records reflecting the names and addresses of any and all employees, associates, directors, trustees, officers, and ministers of the Church of Reflection Inc. during the period of January 1, 1976 to December 31, 1978.

Respondent refused to comply with the summons.

Finally, on July 23, 1980, the government petitioned for judicial enforcement of the summons. 26 U.S.C. §§ 7402 and 7604. The matter was set for hearing and was orally argued on October 24, 1980.

Respondent filed voluminous opposition to enforcement of the summons. He argued therein and at the hearing that: 1) the IRS had failed to comply with 26 U.S.C. § 7605(c); 2) the applicable treasury regulation, 26 C.F.R. § 301.7605–1(c), conflicts with and exceeds the provisions of 26 U.S.C. § 7605(c) and, therefore, is invalid; 3) the applicable treasury regulation, 26 C.F.R. § 301.7605–1(c), is unconstitutional on its face and as applied; 4) activity by the IRS pursuant to 26 U.S.C. § 7605(c) and 26 C.F.R. § 301.7605–1(c) violates principles of administrative law because the Service has failed to establish internal administrative

guidelines to govern its conduct under these sections; 5) enforcement of the summons would lead to "excessive entanglement" of the government in the religious affairs of the Church; 6) the IRS is proceeding against the Church in "bad faith"; 7) the summons is impermissibly overbroad; and 8) the items sought by the Service are protected from disclosure by a "clergy-communicant" privilege.

The court ruled from the bench at the October 24th hearing and rejected all of respondent's arguments except that addressed to the government's compliance with 26 U.S.C. § 7605(c). Section 7605(c) provides in pertinent part:

> No examination of the books of account of a church ... shall be made to determine whether such organization may be engaged in the carrying on of an unrelated trade or business ... unless the Secretary ... believes that such organization may be so engaged and so notifies the organization in advance of the examination.

The court concluded that the letter from Regional Commissioner Cardoza, dated June 6, 1979, did not sufficiently evidence a "belief" by the Commissioner that the Church may be "engaged in the carrying on of an unrelated trade or business" so as to entitle the IRS to examine the books of account of the Church for the purpose of determining the presence and amount of any unrelated business income. The court pointed out that neither the letters dated December 1, 1978 and January 4, 1979 nor the letter dated June 6, 1979 advised respondent that the proposed examination concerned unrelated business income. Rather, the three letters referred only to an examination of the Church's tax exempt status. Thus, the letter from Commissioner Cardoza differed significantly from the letter at issue in *United States v. Miller*, 609 F.2d 336 (8th Cir. 1979). In *Miller* the Regional Commissioner advised the respondent, a director and trustee of the Basic

Bible Church of America, that the proposed examination was for the purpose of reviewing the church's tax exempt status *and* for the purpose of "determining the amount of tax, if any, imposed by the Code on your organization." *Id.* at 339.

Accordingly, the court ruled that until the IRS issued a letter comparable to that in *United States v. Miller, supra*, it was precluded from examining the books of account of the Church for the purpose of determining the presence and amount of any unrelated business income. However, the court did not preclude the IRS from examining the books of account of the Church for the purpose of reviewing its tax exempt status. *See United States v. Freedom Church*, 613 F.2d 316, 324 (1st Cir. 1979).

In light of the court's ruling, the IRS declined to engage in any examination of the books of account of the Church until the Commissioner issued a letter sufficient to permit a dual examination into tax exempt status and unrelated business income. The Service maintained that it would be virtually impossible to limit its examination of the Church's books of account to those items bearing solely on exempt status. Accordingly, the court did not order even partial enforcement of the summons. Instead, the matter was continued for further hearing in order to afford the IRS an opportunity to serve respondent Coates with proper notice.

Prior to the second hearing, respondent obtained new counsel, John M. Youngquist. Mr. Youngquist appeared at the second hearing on January 16, 1981 and argued persuasively that respondent should be allowed a second opportunity to oppose enforcement of the summons. A briefing schedule was established and the matter was calendared for further oral argument.

By the time further argument was heard, only two of the items sought by the summons remained in dispute—the Church's books of account and its corporate minute books.[1] The IRS steadfastly maintained

---

1. Respondent voluntarily supplied the IRS with all other items and documentation sought by the summons.

that it is entitled to examine both sets of books in order to review the Church's tax exempt status as well as its liability for any tax on unrelated business income. The Service further admitted that the present examination of the Church concerns *only* its tax exempt status, and that it has no basis at this time to believe that the Church is engaged in an unrelated trade or business. Respondent opposed disclosure of the Church's books on a number of grounds. However, his principal argument focused on 26 U.S.C. § 7605(c). It is respondent's contention that § 7605(c) prohibits *all* examinations of churches except those undertaken pursuant to a Commissioner's "belief" that the church in question is engaged in an unrelated trade or business. In other words, respondent construes § 7605(c) as foreclosing the ability of the IRS to conduct examinations of churches solely for the purpose of reviewing their tax exempt status.

Section 7605(c)[2] was enacted as a part of the massive 1969 Tax Reform Act. One of the principal objectives of that Act was to eliminate unfair tax preferences, and to that end the Act imposed on all tax exempt entities, including churches, a tax on income derived from unrelated trade or business activities. Statement by Hon. Russell B. Long opening floor debate on H.R. 13270 *reprinted in 2 U.S.Code Cong. & Adm.News* (1969) 1645, at 2490, 2493. Section 7605(c) was one of several "administrative proposals" enacted in conjunction with the new legislation imposing the tax on unrelated business income. S.R. No. 91–552, 91st Cong., 1st Sess., *reprinted in 2 U.S.Code Cong. & Adm.News* (1969) at 2097.

Unquestionably § 7605(c) affords special protections to churches against certain IRS audits. However, neither the legislative history, *see 2 U.S.Code Cong. & Adm.News* (1969) at 1645–2501, nor the case law interpreting § 7605(c) suggests that the IRS is now prohibited from reviewing tax exempt status except when it does so in conjunction with an examination for unrelated business income. *Cf. United States v. Holmes,* 614 F.2d 985, 988 (5th Cir. 1980) (An examination of a church undertaken "to ensure that it is entitled to continued tax exempt status, that it has acquired no unrelated business income, and that it qualifies as an organization to which tax deductible contributions may be made" is clearly undertaken "in pursuit of a legitimate purpose."); *United States v. Freedom Church, supra* at 324 (Section 7605(c) is not a bar to the examination of a church's books of account for the purpose of reviewing its exempt status). As the Eighth Circuit noted in *U. S. v. Life Science Church of America,* 636 F.2d 221, 222–23 (8th Cir. 1980) (emphasis added):

> [T]he statute expressly allows the finances of a church to be inspected for the purpose of a determination of the amount of tax the church may owe under the code. *Further, the statute allows an inspection of the religious activities "to the extent necessary to determine whether such organization is a church."* Although, as [the respondent] asserts, this phrase could be construed to mean once a church, always a church, we do not so construe it. An organization which began exclusively for religious purposes could lose § 501(c)(3) status if it changes its focus.

---

**2.** Section 7605(c) provides as follows:

(c) Restriction on examination of churches. —No examination of the books of account of a church or convention or association of churches shall be made to determine whether such organization may be engaged in the carrying on of an unrelated trade or business or may be otherwise engaged in activities which may be subject to tax under part III of subchapter F of chapter 1 of this title (sec. 511 and following, relating to taxation of business income of exempt organizations) unless the Secretary (such officer being no lower than a principal internal revenue offi-

cer for an internal revenue region) believes that such organization may be so engaged and so notifies the organization in advance of the examination. No examination of the religious activities of such organization shall be made except to the extent necessary to determine whether such organization is a church or a convention or association of churches, and no examination of the books of account of such an organization shall be made other than to the extent necessary to determine the amount of tax imposed by this title.

Thus, the circuit court rejected the respondent's argument that the IRS could not examine the religious or financial activities of the Life Science Church to determine whether the church continued to qualify as a tax exempt organization.

Like the Eighth Circuit, this court reads § 7605(c) as expressly permitting examinations for unrelated business income *and* examinations of tax exempt status. Examinations for unrelated business income are governed by the first and the latter part of the second sentences of the subsection:

> No examination of the books of account of a church ... shall be made to determine whether such an organization may be engaged in the carrying on of an unrelated trade or business ... unless the Secretary ... believes that such organization may be so engaged and so notifies the organization in advance of the examination. . . . [N]o examination of the books of account of such an organization shall be made other than to the extent necessary to determine the amount of tax imposed by this title.

Examinations of tax exempt status, on the other hand, are governed by the first part of the second sentence of the subsection:

> No examination of the religious activities of such an organization shall be made except to the extent necessary to determine whether such organization is a church or a convention or association of churches . . . .

Pointing to the phrase "such an organization," respondent argues that the second sentence of § 7605(c) permits an examination of the tax exempt status of *only* those churches which are described by the *entire* first sentence of the subsection, i. e. churches which are believed by the Secretary to be engaged in unrelated business activity. The court rejects the construction proposed by respondent. To adopt his argument would give rise to the anomaly of the phrase "such an organization" carrying one meaning in the first sentence of the subsection and another in the second sentence thereof. The phrase is used twice in the first sentence of the subsection, and clearly is used as a short hand reference to the longer phrase "of a church or convention or association of churches," which appears very near the beginning of the first sentence. There is no reason for placing a more complex meaning on the phrase "such an organization" when it is used in the second sentence of the subsection.

■ Although § 7605(c) is not an absolute bar to examinations undertaken solely for the purpose of reviewing tax exempt status, it is the opinion of this court upon re-examination of pertinent legislative history and case law, that the subsection does impose significant restrictions on such examinations. The statute clearly distinguishes between examinations of church books of account and examinations of religious activities. Examinations of the latter sort are permissible only "to the extent necessary" to determine whether an organization is a church and therefore exempt from taxation. Religious activities cannot be examined for the purpose of determining the presence and amount of any unrelated business income.

With respect to examinations of church books of account the statute provides:

> No examination of the books of account of a church or convention or association of churches shall be made to determine whether such organization may be engaged in the carrying on of an unrelated trade or business ... unless the Secretary ... believes that such organization may be so engaged and so notifies the organization in advance of the examination. . . . [N]o examination of the books of account of such an organization shall be made other than to the extent necessary to determine the amount of tax imposed by this title.

It can be cogently argued that these provisions impose restrictions on examinations of church books of account *only* when such examinations are undertaken for the purpose of determining the presence and amount of any unrelated business income, and that, accordingly, these provisions are inapplicable when an examination is undertaken for the purpose of reviewing exempt

status. Were this view adopted, the phrase "amount of tax imposed by this title" appearing in the second of the above-quoted sentences would have to be construed as referring to *all* taxes imposed by Title 26 of the United States Code, including those imposed on non-exempt organizations, rather than to the one tax imposed by Title 26 on tax exempt entities—the tax on unrelated business income. This is the only construction which would permit the statute to be fairly read as allowing an examination of church books of account when the investigation focuses solely on exempt status, the theory being that should an investigation reveal that an audited church is not exempt from taxation, the entity would be subject to the taxing provisions of Title 26, and thus, the examination of its books of account would have been "necessary" in order to determine its tax liability.

Upon review of the legislative history, the court is persuaded that the phrase "amount of tax imposed by this title" refers to the sole tax imposed by Title 26 on exempt organizations—the tax on unrelated business income, and that, consequently, the final sentence of § 7605(c) permits examinations of church books of account only to the extent necessary to determine the presence and amount of any such income. For example, the Senate Report provides:

> The bill contains several administrative provisions including one providing that *no audit* of a church, its integrated auxiliaries, or a convention or association of churches *is to be made* unless the principal internal revenue officer for the region believes the church may be engaged in a taxable activity and notifies the church in advance of the examination. This provision is intended to protect churches from unnecessary tax audits in the interest of not interfering with the internal financial matters of churches.

S.R. No. 91–552, 91st Cong., 1st Sess., *reprinted in* 2 *U.S.Code Cong. & Adm.News* (1969) at 2097 (emphasis added). Thus, the court concludes that § 7605(c) precludes the IRS from examining church books of account when an investigation is undertaken solely for the purpose of reviewing tax exempt status.

The court is also concerned that a substantial risk of inadvertent abuse would exist should the restrictions set forth in § 7605(c) be construed as applying only to IRS examinations undertaken for the purpose of determining the presence and amount of any unrelated business income. Examinations of small "non-traditional" churches such as the Church of Reflection, Inc. are frequently undertaken solely for the purpose of reviewing tax exempt status. Yet such examinations would yield all the information necessary to determine the presence and amount of any unrelated business income, and the statute does not purport to prevent an assessment for taxes on unrelated business income even though the data underlying such an assessment have been discovered during the course of an examination of tax exempt status. Thus, those churches which have been examined solely for the purpose of reviewing their tax exempt status and which have been found to have unrelated business income and which have been assessed for such, will have been deprived of the protections afforded by § 7605(c).

The court is aware that its construction of § 7605(c) is at odds with the holding in *United States v. Freedom Church, supra* at 324, wherein the First Circuit ruled that "both the words of the statute and its legislative history contradict appellants' second claim that section 7605(c) prohibits an IRS examination of 'books of account' to determine the tax exempt status of an organization that claims to be a church." The circuit court relied upon the following legislative history to support its ruling:

> New subsection (c) [of § 7605] does not preclude an agent, for example, from examining an organization to determine if it is, in fact, a church.

H.R. No. 91–413, 91st Cong., 1st Sess., *reprinted in* 2 *U.S.Code Cong. & Adm.News* (1969) at 1910. This legislative history clearly supports a ruling, such as that made herein by this court, that § 7605(c) does not preclude IRS examinations undertaken sole-

ly for the purpose of reviewing exempt status. However, the excerpt is entirely silent as to the permissible scope of such examinations. Thus, it cannot fairly be read as supporting the broad ruling in *Freedom Church.*

 The First Circuit also relied on 26 C.F.R. § 301.7605–1(c)(2). This regulation provides that:

> No examination of the books of account of an organization which claims to be a church or a convention or association of churches shall be made except after the giving of notice as provided in this subparagraph and except to the extent necessary (i) to determine the initial or continuing qualification of the organization under section 501(c)(3); (ii) to determine whether the organization qualifies as one, contributions to which are deductible under section 170, 545, 556, 642, 2055, 2106, or 2522; (iii) to obtain information for the purpose of ascertaining or verifying payments made by the organization to another person in determining the tax liability of the recipient, such as payments of salaries, wages, or other forms of compensation; or (iv) to determine the amount of tax, if any, imposed by the Code upon such organization. No examination of the books of account of a church or convention or association of churches shall be made unless the Regional Commissioner believes that such examination is necessary and so notifies the organization in writing at least 30 days in advance of examination. The Regional Commissioner will conclude that such examination is necessary only after reasonable attempts have been made to obtain information from the books of account by written request and the Regional Commissioner has determined that the information cannot be fully or satisfactorily obtained in that manner. In any exami-

nation of a church or convention or association of churches for the purpose of determining unrelated business income tax liability pursuant to such notice, no examination of the books of account of the organization shall be made except to the extent necessary to determine such liability.

Thus, the regulation clearly permits the examination of books of account in investigations undertaken solely for the purpose of reviewing tax exempt status. Ordinarily great deference is given to IRS regulations. *See Dillon Ranch Supply v. United States,* 652 F.2d 873, 880 (9th Cir. 1981); *Max Sobel Wholesale Liquors v. C. I. R.,* 630 F.2d 670, 672 (9th Cir. 1980). No doubt the First Circuit was employing this maxim when it relied upon § 301.7605–1(c)(2) as support for its ruling in *Freedom Church.* However, regulations which are not in harmony with the plain language of the underlying statute cannot serve as a guide in statutory construction. *See Max Sobel Wholesale Liquors v. C. I. R., supra.* In fact, such regulations must be deemed invalid. *Max Sobel Wholesale Liquors v. C. I. R., supra* at 672–73; *Utility Workers, etc. v. Consumers Power Co.,* 637 F.2d 1082, 1089 (6th Cir. 1981); *Estate of Lovett v. United States,* 621 F.2d 1130, 1135 (Ct.Cl.1980). Having determined that § 7605(c) prohibits examinations of church books of account in investigations undertaken solely to review exempt status, this court must both discount the First Circuit's reliance on § 301.7605–1(c)(2) and rule that the regulation is invalid to the extent it conflicts with the statute.[3]

For the reasons stated above, enforcement of the IRS summons here in dispute will be denied insofar as it seeks production of the books of account of the Church. However, the summons also seeks production of the Church's corporate minute

---

**3.** The court acknowledges that its construction of § 7605(c) will severely hamper the IRS in its efforts to revoke tax exempt status on the basis of rediversion of funds, as rediversion, in large part, can only be detected by an examination of church books of account. However, it is not the function of this court " 'to engraft on a

statute additions which we think the legislature logically might or should have made.' " *United States v. Bernard,* 623 F.2d 551, 556 (9th Cir. 1979), *quoting United States v. Cooper Corp.,* 312 U.S. 600, 61 S.Ct. 742, 744, 85 L.Ed. 1071 (1941).

books. Examination of these books is not restricted by § 7605(c). Thus, the court must consider respondent's contention that the instant examination unconstitutionally "entangles" the IRS in the religious affairs of the Church.

█ Respondent is especially distressed by the present examination in light of the fact that it was commenced just two years after the IRS issued a letter ruling declaring the Church a tax exempt entity. While re-examination of the Church's exempt status may be somewhat unfair under the circumstances, it certainly does not amount to an excessive entanglement in its religious affairs. The IRS has not yet crossed that admittedly ill-defined line between legitimate examination and ongoing regulation and interference with the religious affairs of the Church. *See United States v. Life Science Church of America, etc., supra* at 222–23; *United States v. Holmes, supra* at 989–90; *United States v. Freedom Church, supra* at 320.

Alternatively, respondent suggests that 26 C.F.R. § 301.7605–1(c)(3) prohibits re-examination of the Church's exempt status. The regulation provides in pertinent part:

> Once it has been determined that the organization is a church or convention or association of churches, no further examination of its religious activities may be made in connection with determining its liability, if any, for unrelated business income tax.

It is clear that this regulation precludes further examination of church activities only in the context of an examination to determine the presence and amount of any unrelated business income. The regulation does not prohibit a re-examination of tax exempt status.

█ There being no constitutional or statutory impediment to production of the Church's corporate minute books, the court must determine whether the IRS has made an adequate showing to justify their disclosure. Ordinarily, the IRS need show only:

(1) that the investigation will be conducted pursuant to a legitimate purpose; (2) that the inquiry may be relevant to the purpose; (3) that the information sought is not already within the Service's possession; and (4) that the administrative steps required by the Internal Revenue Code have been followed.

*United States v. Church of Scientology of California*, 520 F.2d 818, 821 (9th Cir. 1975), *citing United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). *See also United States v. Goldman*, 637 F.2d 664 (9th Cir. 1980). These four requirements have been satisfied in the case at bar. However, § 7605(c) expressly states that an examination of church activities may be undertaken only "to the extent *necessary* to determine whether such organization is a church . . ." (emphasis added). Thus, subsection (c) has "pruned" the second element of the *Powell* test. *United States v. Holmes, supra* at 988. The court finds, however, that the IRS has made an adequate showing that an examination of the Church's corporate minute books is necessary in order for it to reach a fair determination as to the continuing tax exempt status of the Church.

IT IS THEREFORE ORDERED that the petition of the IRS for enforcement of the summons directed to Edwin R. Coates, as representative of the Church of Reflection, Inc., is DENIED insofar as it seeks production of the books of account of the Church and is GRANTED insofar as it seeks production of the corporate minute books thereof.