[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-12649
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cv-22271-KMM

WILLIAM D. REDFERN,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 17, 2019)

Before JORDAN, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

William Redfern appeals from the district court's order denying his motion to quash summons that the Internal Revenue Service issued to financial institutions of which he was an account holder. After reviewing the parties' briefs and the record, we affirm.

**I.**

On May 18, 2018, the Internal Revenue Service issued third-party summonses to Bank of America, Deutsche Bank, HSBC Bank USA, JP Morgan Chase, and Wells Fargo Bank. The summonses were issued at the request of the French government, pursuant to the United States–France Income Tax Treaty, to aid an ongoing investigation into Redfern's tax liability.

As required by Internal Revenue Code § 7609(a)(1), the IRS provided Redfern, as the holder of the accounts, with notice of the summons and an explanation of the recipient's right to bring a proceeding to quash the summons. Specifically, it mailed the required notice to Redfern at (1) the address that appeared on his most recently filed and processed federal tax return and (2) the address identified by France as the address he reported to the government, as well as (3) to Leslie R. Kellogg, an attorney at Hodgson Russ LLP, from whom the IRS had received a power of attorney signed by Redfern authorizing her to receive confidential tax information on Redfern's behalf.

2

Redfern timely petitioned the Southern District of Florida to quash the summons on June 7, 2018. In his initial petition, he alleged that the summons were erroneously delivered to Hodgson Ross, which was no longer his law firm, and that the firm was not authorized to accept service on his behalf. The crux of his argument was that, by sending the form to Hodgson Ross, as opposed to the address on his last tax return, the IRS had not complied with the applicable Treasury regulations. The United States moved to dismiss the petition to quash and counter-petitioned to enforce the summonses. It presented evidence that it had sent the summonses to Redfern not only at Hodgson Russ, but also "at the address that appears on his most recently filed and processed Federal tax return, in accordance with 26 U.S.C. § 7609(a)." In response, Redfern switched gears. He argued that § 7609(a), as enforced, violated his constitutional rights to due process and that the IRS violated the Hague Service Convention of 1964 because the notices sent by the IRS ultimately did not intend to *actually* inform him of the summonses.

The district court ultimately denied Redfern's petition to quash the summonses and granted the government's counter-petition to enforce them. Redfern timely appealed to us.

**II.**

3

We begin by briefly reviewing the framework governing the enforceability of IRS summonses. The IRS is granted "broad statutory authority to summon a taxpayer to produce documents or give testimony relevant to determining tax liability." United States v. Clarke, 573 U.S. 248, 249 (2014). Under § 7602 of the Internal Revenue Code, the IRS is authorized "[t]o examine any books, papers, records, or other data which may be relevant or material" to an inquiry surrounding a taxpayer's tax liability, and may summon "any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act." 26 U.S.C. § 7602(a)(1–2). When the IRS issues a summons to a third-party, as § 7602(a)(2) allows, it is subject to additional procedural safeguards. Specifically, the taxpayer must be provided with "notice of the summons," which includes "a copy of the summons which has been served" and "an explanation of the right . . . to bring a proceeding to quash the summons." Id. § 7609(a)(1).

Though courts are granted the power to enforce summonses, our power to review the IRS's attempt to enforce its summonses is necessarily limited. We "may inquire as to only whether the 'IRS issued a summons in good faith, and must eschew any broader role of overseeing the IRS's determinations to investigate." Presley v. United States, 895 F.3d 1284, 1289 (11th Cir. 2018) (quoting Clarke, 573 U.S. at 254) (alterations omitted). In United States v. Powell,

4

the Supreme Court articulated a four-part test to determine if the IRS has established a *prima facie* case for enforcement and if it is acting in good faith. 379 U.S. 48, 57–58 (1964).  First, the government must demonstrate that "(1) the investigation has a legitimate purpose, (2) the information summoned is relevant to that purpose, (3) the IRS does not already possess the documents sought, and (4) the IRS has followed the procedural steps required by the tax code."  Presley, 895 F.3d at 1289 (citing Powell, 379 U.S. at 57–58).  If the government does so, the "burden shifts to the taxpayer to disprove one of the four Powell criteria, or to demonstrate that judicial enforcement should be denied on the ground that would be an abuse of the court's process."  Id. (citations and quotations omitted).  This is a "heavy" burden that requires "allegation of specific facts and introduction of evidence."  United States v. Levanthal, 961 F.2d 936, 940 (11th Cir. 1992).

As the Supreme Court has explained, these proceedings are meant to be "summary in nature."  United States v. Stuart, 489 U.S. 353, 369 (1989).  "The purpose of a summons is 'not to accuse,' much less to adjudicate, but only 'to inquire.'"  Clarke, 573 U.S. at 254 (quoting United States v. Bisceglia, 420 U.S. 141, 146 (1975).  Accordingly, we will only reverse a district court order enforcing an IRS summons if it is "clearly erroneous."  United States v. Medlin, 986 F.2d 463, 466 (11th Cir. 1993).

**III.**

Redfern's argument focuses on the IRS's alleged failure to follow the procedural steps required by the tax code in issuing the summonses at issue. In so doing, he concedes that the first three Powell factors are met and addresses his arguments toward the fourth. See Powell, 379 U.S. at 57–58. We conclude that his arguments ultimately lack merit and that the district court's decision to enforce the summonses was not clearly erroneous—or even wrong at all.

We begin by turning to the Internal Revenue Code. Section 7609(a)(2), which establishes the procedure for third-party summonses, provides that "notice shall be sufficient" if it is "mailed by certified or registered mail to the last known address of such person." "If such notice is mailed, it shall be sufficient if mailed to the last known address of the person entitled to notice." Id. The relevant Treasury regulations provide that "a taxpayers last known address is the address that appears on the taxpayer's most recently filed and properly processed Federal tax return." Berkun v. Comm'r, 890 F.3d 1260, 1263 (11th Cir. 2018) (quoting 26 C.F.R. § 301.6212-2).

It is undisputed in this case that the IRS mailed notice of the third-party summonses to Redfern's last known address in Nicosia, Cyprus, *i.e.*, the address that appeared on his most recently filed and processed federal tax return. This seemingly forecloses our inquiry—the fourth Powell factor merely requires that the IRS follow "the administrative steps required by the [Internal Revenue Code],"

6

namely that the IRS "has notified the taxpayer in writing" of the summonses. Powell, 379 U.S. at 58.  The burden then shifts to Redfern to disprove the fourth Powell factor or to "demonstrate that judicial enforcement should be denied on the ground that it would be an abuse of the court's process."  Presley, 895 F.3d at 1289.

Our review of the record persuades us that Redfern has failed to carry this burden.  In evaluating whether the IRS acted in "good faith," and whether judicial enforcement of the summons would "be an abuse of the court's process," we find it significant that the IRS not only mailed a notice of the summons to Redfern's Cypriot address in Nicosia, which was the address that appeared on his most recently filed and processed federal tax return, but that it also mailed notices of the summons to the French address that Redfern had reported to the French tax authority *and* to Hodgson Russ LLP, whom Redfern had previously granted power of attorney.  In so doing, the IRS clearly evinced an intent to actually reach Redfern and apprise him of the summonses that it had issued to the banks with which he held accounts.

Redfern was mailed notice of the third-party summonses in compliance with § 7609(a)(2).  The Internal Revenue Code's procedure "expressly provides that notice is *sufficient* if *mailed* by certified or regular mail to the last known address of the person entitled to notice.  This language negates any inferences that the

requisite notice is not 'given' until its receipt by the addressee. . . . [T]he notice contemplated in section 7609 is 'given' on the day it is mailed."  Stringer v. United States, 776 F.2d 274, 275–76 (11th Cir. 1985) (emphasis in original) (citation omitted).  As a practical matter, that ends the Powell inquiry.  Redfern has conceded statutory compliance, even as he argues its constitutional defectiveness, and has therefore failed to overcome his "heavy burden" to disprove the fourth Powell factor.  Moreover, we do not believe that the IRS's diligent compliance with the Internal Revenue Code's procedures constitutes "abuse of the court's process."  Presley, 895 F.3d at 1289.

However, Redfern argues that the IRS failed to comport with the procedural due process requirements established by the Supreme Court in Mullane v. Cent. Hanover Bank & Tr. Co., where it required that service of process be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. 306, 314 (1950).  Even if we applied Mullane's requirements to the context presented to us by this case—that is, notice of an IRS summons[1]—we are

---

[1] Although we need not in this case decide the issue, and we expressly do not do so, we are doubtful that Mullane's requirements apply in this context.  We find our past opinion in United States v. Bichara instructive, in which we held that imposing Fifth Amendment due process requirements on the service of IRS summons reflected a "misunderstanding of the nature of a tax summons."  826 F.2d 1037, 1039 (11th Cir. 1987).  Though Bichara presented a somewhat different context, our understanding the principles it established gives us skepticism that Mullane applies in the context of this case.

8

confident that the notice provided by the IRS fully complied with the requirements of procedural due process.  As stated previously, the IRS mailed notices of the summons to the address Redfern had provided on his last tax return, to the address that he had provided to the French tax authority, and to the law firm to which he had granted power of attorney.

We think that this array of notices of the pending summonses amply satisfies the requirements of Mullane, even if it were deemed to apply.  Redfern's argument that the IRS failed to reasonably calculate how best to apprise him of the summons is undermined by the fact that the IRS's reasonable calculation in this case was correct.  One of the addresses to which notice of the summons was sent was the law firm that Redfern had granted power of attorney.  The law firm received the notice.  Leslie Kellogg, an attorney with the firm, informed Redfern of the summonses.  Redfern timely objected.  In short, the process worked.  More significantly, *three* notices were sent, each to an apparently reliable address

---

The Internal Revenue Code protects an unserved taxpayer from fallout from an undelivered summons.  See id. at 1039.  If the IRS mails a summons to a taxpayer, but he fails to actually receive it, the likelihood that this will adversely affect his rights is far from clear.  Under the procedural steps imposed by the Code, and under the judicial enforcement of those proceedings as provided by Powell, the government must "make a preliminary showing that the summons was issued for a legitimate purpose, that the information sought is relevant to that purpose, that the information sought is not already within the Commissioner's possession, and that the appropriate administrative steps have been followed" *before* it "may enforce the summons."  Id.  In other words, "prior to any formal enforcement of the summons and contempt proceedings against [him], [a taxpayer] is entitled to an adversary proceeding affording a judicial determination of the challenges to the summons and giving complete protection to the taxpayer."  Id. (quotation and citation omitted).  The rights of taxpayers are protected by the Internal Revenue Code and by the judicial supervision of IRS summonses.

provided by Redfern himself.  We cannot conclude otherwise than that the notices, as a whole, were "reasonably calculated, under all the circumstances, to apprise" Redfern of the pending summonses.

We also think that this case is vastly dissimilar from Jones v. Flowers, in which the Supreme Court held that, where "the government becomes aware prior to the taking that its attempt at notice has failed," because the notice was returned to the government undelivered, its effort "was insufficient to satisfy due process." 547 U.S. 220, 226–27, 239 (2006).  Here, the IRS did not become aware that "its attempt at notice ha[d] failed"—nothing was returned to the IRS undelivered.

We reject Redfern's arguments to the contrary and determine that the district court did not clearly err in denying his motion to quash the summonses and granting the government's motion to enforce them.

**AFFIRMED.**

10